**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                    :
THOMAS FRANCOIS,                    :
                                    :      Civil Action
            Petitioner,             :      No. 06-3589 (FSH)
                                    :
     v.                             :      **O P I N I O N**
                                    :
MICHAEL CHERTOFF, et al.,           :
                                    :
            Respondents.            :
_____:


**APPEARANCES:**

    THOMAS FRANCOIS, Petitioner pro se
    ID. # 169661
    Hudson County Correctional Center
    Kearny, New Jersey 07032


**FAITH S. HOCHBERG, District Judge**

On August 1, 2006, Petitioner THOMAS FRANCOIS (hereinafter "Petitioner"), a native and citizen of Haiti currently detained at the Hudson County Correctional Center in Kearny, New Jersey, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition") under 28 U.S.C. § 2241,[1] challenging his detention by the Department of Homeland Security (hereinafter

---

[1] Petitioner submitted the Petition together with an application to proceed in forma pauperis.

"DHS").[2]

Petitioner, a felon under a final order of removal, see Pet. at 4, asserts that he is being held in custody in violation of 8 U.S.C. § 1231(a)(6), as clarified in Zadvydas v. Davis, 533 U.S. 678 (2001), see id. at 5-6, and the Due Process Clause of the Fifth Amendment, see id. at 7, and seeks a writ "directing Respondents to immediately release Petitioner from custody [and] enjoining Respondents from further . . . detention of Petitioner." Id. at 8.

Having thoroughly examined Petitioner's application, this Court grants Petitioner in forma pauperis status and denies the Petition.

**JURISDICTION**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are

---

[2] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

satisfied: (1) the petitioner is "in custody" and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights.  See Zadvydas, 533 U.S. at 699.

**STANDARD OF REVIEW**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert.

denied, 399 U.S. 912 (1970).  However, a habeas corpus petition must still meet certain pleading requirements, see McFarland v. Scott, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254, Rule 2(c)), for instance, the petition must set forth "the facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing Habeas Cases.

**BACKGROUND**

   Petitioner acknowledges the following facts:

(A) "On December 9, 2005, Immigration Judge ordered Petitioner removed to Haiti."  Pet. § 13.

(B) "On March 14, 2006, Petitioner signed an application for the Haitian travel document."  Id. § 14.

(C) "On July 14[], 2006, Petitioner was taken for the interview with the Haitian Consul in Pennsylvania."  Id.

(D) "To date, [i.e., August 1, 2006,] more than six month after Petitioner's removal order [was issued], Petitioner has not been removed . . . ."  Id. § 21.[3]

(E) "[As of August 1, 2006,] Petitioner cooperated fully with [the government in the] efforts to remove him from the United States."  Id. § 14.

---

[3] Petitioner's Petition contains Sections 1 to 15 and 20 to 26. While Sections 16 to 19 are missing from Petitioner's Petition, it appears that no loss of paperwork took place (since both Section 15 and Section 20 are located on page four of the Petition).

Page -4-

From the above-listed facts, Petitioner deduces as following conclusion:

> Since Petitioner was ordered removed on December 9, 2005, his . . . statutory removal period ended on March 9, 2006, and his six-month presumptively reasonable removal period [under Zadvydas] ended on June 9, 2006[,] Petitioner established, there is no realistic chance that he will be removed to Haiti or any other country, thus his removal is not reasonably foreseeable, and continued detention is unlawful.

Id. § 23.

**DISCUSSION**

**I.   Legal Framework**

According to the Petition, Petitioner was ordered removed from the United States by an Immigration Judge on December 9, 2005, and his removal period began to run on that very date.[4]

---

[4] Petitioner states that he "waived his rights to appeal [his order of removal], thus making [the] removal order administratively final on December 9, 2005," that is, the date of issuance of the order. Petitioner's Petition, however, *does not state when Petitioner executed the waiver*. See generally, Pet. Only if Petitioner executed the waiver on the date of the issuance of his removal order, the order became final that very day; otherwise, the order became final on the date when the waiver was executed. See 8 C.F.R. § 1003.39 ("Except when certified by the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken[,] whichever occurs first"). Giving Petitioner the benefit of the doubt, this Court presumes, solely for the purposes of this Opinion and accompanying Order, that Petitioner's waiver was executed on December 9, 2006. This presumption, however, does not constitute a finding of fact by this Court for purposes unrelated to the instant proceeding.

<u>See</u> Pet. § 13.    The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final; or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  <u>See</u> 8 U.S.C. § 1231(a)(1)(B).

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

While, during the "removal period," the alien must be detained, <u>see</u> <u>id.</u> § 1231(a)(2), after the removal period, the government may detain the alien or release him subject to conditions of release.  <u>See</u> <u>id.</u> § 1231(a)(6).  In <u>Zadvydas</u>, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  533 U.S. at 689

(holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit *indefinite* detention") (emphasis supplied).  Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01.  However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

533 U.S. at 701 (emphasis supplied).

Moreover, nothing in the language of Zadvydas decision limited the tolling-like function enunciated in 8 U.S.C. §

1231(a)(1)(C),[5] that is, the "non-cooperation"-based quasi-tolling which factors out the period of "non-cooperation" from the six months of presumptively reasonable period annunciated in Zadvydas. Accord Qing Di Wang v. Carbone, 2005 U.S. Dist. LEXIS 24499 (D.N.J. Oct. 17, 2005) (calculating presumptive period excluding the period of non-cooperation and relying on Riley v. Greene, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001), and Sango-Dema v. District Director, 122 F. Supp. 2d 213, 221 (D. Mass. 2000)).

## II. Analysis

Petitioner appears to assert that Petitioner's six-month "presumptively reasonable period of detention" under Zadvudas expired on June 9, 2006. See Pet. § 21 ("[As of August 1, 2006,] more than six months after Petitioner's removal order, Petitioner has not been removed"). However, the facts stated by Petitioner indicate that Petitioner's Zadvydas period might still be running, since Petitioner "signed [his] application for the

---

[5] Indeed, it would be anomalous to suggest that alien's frustration of government's efforts to remove him would reward the alien with release from custody if the alien is persistent enough to keep his thwarting activities for a period exceeding Zadvydas' six months. "Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." Pelich v. INS, 329 F.3d 1057, 1060 (9th Cir. 2003).

Haitian travel document" only on March 14, 2006, that is, more than three months after Petitioner's order of removal was issued. See id. § 14. Petitioner's Petition leaves this Court guessing whether such delay in signing the application was due to Petitioner's refusal to sign it. See generally, Pet. If the delay was attributable to Petitioner's actions, Petitioner's Zadvydas period began to run only on March 14, 2006, and has not expired as of the date of this Opinion (a) making Petitioner's Zadydas claim premature, and (b) requiring denial of Petitioner's Petition. See Rene v. Chertoff, 06-336 (JAG) (D.N.J. July 31, 2006) (coming to the same conclusion on the basis of nearly identical facts); accord Qing Di Wang, 2005 U.S. Dist. LEXIS 24499; Sango-Dema, 122 F. Supp. 2d 213.

Moreover, even if this Court is to presume that Petitioner fully cooperated with the government right from the date of Petitioner's order of removal and, thus, Petitioner's Zadvudas' "presumptively reasonable period of removal" expired on June 9, 2006, this presumption does not change the outcome of this case.

Petitioner filed the instant Petition asserting that "Petitioner established [that] there is no realistic chance that he will be removed to Haiti or any other country." Id. § 23. Petitioner's Petition, however, is void of any fact indicating that Petitioner's removal is not reasonably foreseeable, short of Petitioner's statement that "more than six months after

Petitioner's removal order, Petitioner has not been removed." Id. § 21.

It appears to this Court that Petitioner misreads the holding of Zadvydas, especially the Supreme Court's unambiguous guidance that "6-month presumption, of course, does not mean that every alien not removed must be released after six months." 533 U.S. at 701. The sole fact of expiration of the six-month period lends no support to Petitioner's claim, since Petitioner should establish *other* facts indicating that his removal is not foreseeable. See id. ("the alien [shall] provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future").

Contrary to Petitioner's self-serving assertion that "his removal is not reasonably foreseeable," Pet. § 23, the facts stated by Petitioner himself unambiguously indicate that the government is making steady progress with respect to Petitioner's removal. See id. § 14 (acknowledging Petitioner's interview by Haitian Consul four months after "Petitioner signed his application for the Haitian travel document"). While Petitioner apparently concluded that "his removal was not reasonably foreseeable" only two weeks after being interviewed by the Consul, see Pet. § 23, this Court does not share Petitioner's pessimism. The sole fact that the governments of the United States and Haiti were unable to arrange for Petitioner's removal

within two weeks after Petitioner's interview by Haitian Consul does not indicate that Petitioner's removal is not foreseeable. See Zadvydas, 533 U.S. at 701.

Since Petitioner's Petition provides this Court with a good reason to believe that Petitioner's removal is foreseeable, Petitioner's Petition is denied.  This Court, however, notes that Petitioner is free to file another § 2241 petition should Petitioner develop good evidence-based reason to believe that his removal is no longer reasonably foreseeable.

**CONCLUSION**

Petitioner's application for a writ of habeas corpus under § 2241 is hereby denied.

An appropriate Order accompanies this Opinion.


/s/ Faith S. Hochberg
**United States District Judge**

Dated: August 23, 2006